**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| **H. H. FRANCHISING SYSTEMS, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No.:** |
| **MISSIONERA LLC, VLADIMIR PETRENKO, and ELENA PETRENKO,** | |
| **Defendants.** | |

<u>**COMPLAINT FOR DECLARATORY JUDGMENT AND NECESSARY RELIEF**</u>

Plaintiff H. H. Franchising Systems, Inc. ("HHFS"), by its attorneys, and for its complaint against Missionera LLC, Vladimir Petrenko, and Elena Petrenko, states as follows:

<u>**INTRODUCTION**</u>

1.      HHFS is the national franchisor of the Home Helpers® brand of franchised home care businesses operating throughout the country. Defendants are the franchisee and individual guarantors of a franchised Home Helpers® business in Connecticut, which they have been continuously operating under HHFS's marks and proprietary system for more than a decade.

2.      After the franchise agreement's scheduled term expired, HHFS extended it on a month-to-month basis while defendants decided whether to renew the agreement. Defendants recently terminated the month-to-month term effective April 5, 2024.

3.      Although defendants agreed not to engage in a competitive business within fifteen miles of their former franchised territory for a period of two years after the franchise agreement terminates or expires, HHFS has learned that defendants intend to do just that by continuing to operate the same business, at the same location, under the name "Mission Era Homecare."

4. HHFS seeks a declaration that defendants' actions would constitute a material breach of the franchise agreement and personal guarantees together with supplemental relief, including a preliminary and permanent injunction enjoining defendants from violating their post-termination noncompetition covenants.

## PARTIES

5. Plaintiff HHFS is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

6. Defendant Missionera LLC ("Missionera") is a Connecticut limited liability company with its principal place of business in Simsbury, Connecticut.

7. Defendant Vladimir Petrenko ("Vladimir") and Elena Petrenko ("Elena") are a married couple who are both citizens and residents of Connecticut.

8. Elena used to be the principal member of Missionera, but recent filings indicate that Vladimir is now Missionera's sole member.

## JURISDICTION AND VENUE

9. The Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) in that it is a civil action between citizens of different states, wherein the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue is proper in this district under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in this district.

11. Jurisdiction and venue are also proper in this judicial district because defendants expressly agreed in writing in the franchise agreement and personal guarantees discussed below that any action between the parties will be brought exclusively in this Court, and they irrevocably consented, and waived any objection, to jurisdiction of and venue in this Court.

## RELEVANT FACTS

**Home Helpers® Trademarks and Franchise System**

12.     HHFS is the national franchisor of the Home Helpers® brand of franchised home care businesses offering senior care, home healthcare, home care aide, personal care aid assistance, companion services, and medical alert services.

13.     There are more than 200 Home Helpers franchises located throughout the country, which franchisees operate under written franchise agreements with HHFS.

14.     As a result of HHFS's extensive experience in the industry, HHFS has developed and perfected distinctive methods and procedures for the operation of such businesses using the HHFS system, which consists of methods and procedures for marketing and advertising; specially designed forms, methods, and procedures for efficient operation of the franchised business; operations manuals and training courses; and specially designed procedures for the promotion and provision of the services offered by the franchised business.

15.     Franchisees also receive a limited license to use the Home Helpers®, Direct Link®, and other related trade names, service names, and trademarks (collectively, the "Home Helpers Marks") and all the goodwill associated with those marks in connection with the operation of their franchised business.

16.     Each franchisee is granted a different geographic territory composed of postal zip codes within which the franchisee is authorized to operate.

17.     HHFS agrees not to establish another franchised or corporate-owned health care business within each franchisee's assigned geographic territory during the term of the franchise agreement.

18.     In exchange, franchisees agree to comply with the franchise system standards and pay royalties and other fees owed in connection with the operation of the franchised business.

19.     To induce HHFS to enter into franchise agreements and to provide franchisees access to HHFS's proprietary system and license of the Home Helpers Marks, franchisees also agree to a reasonable post-termination noncompetition covenant.

20.     This covenant is designed to protect HHFS's legitimate business interests, such as:

   a.  HHFS's customer relationships;

   b.  the goodwill associated with the Home Helpers Marks, which franchisees agree inures exclusively to HHFS's benefit;

   c.  HHFS's confidential and proprietary know-how, methods of operation, and operating systems, and the competitive edge they afford HHFS and its authorized franchisees; and

   d.  HHFS's ability to refranchise the territory and thereby protect the goodwill associated with its brand in the market.

**The Parties' Franchise Agreement**

21.     Effective June 6, 2013, Vladimir and Elena, as co-franchisees, and HHFS, as franchisor, entered into a written franchise agreement under which HHFS granted them the right to own and operate a Home Helpers franchised business in certain postal zip codes in and around Fairfield County, Connecticut for an initial ten-year term.

22.     That same day, the same parties executed a second franchise agreement that authorized them to provide related personal emergency response systems, medication management, and telehealth monitoring products and services under HHFS's Direct Link mark in the same postal zip codes for the same initial term.

23.     In 2016, HHFS stopped offering new Direct Link franchises and expanded the scope of Home Helpers franchises to include the services previously offered under the separate Direct Link franchise agreement. For this reason, the Home Helpers franchise agreement and Direct Link franchise agreement will be referred to hereinafter as the "Franchise Agreement."

24.     On or about June 11, 2013, Elena assigned her fifty percent interest in the Franchise Agreement to Missionera.

25.     Since then, Victor and Missionera have been the co-franchisees under the Franchise Agreement (collectively, "Franchisee").

26.     In addition, Elena and Vladimir each personally guaranteed Franchisee's obligations under the Franchise Agreement, and agreed to be personally bound by, and personally liable for the breach of, each and every provision of the Franchise Agreement, including the post-termination noncompetition covenant.

27.     Under the Franchise Agreement, HHFS, among other things, granted defendants a limited license to use the Home Helpers Marks in connection with the operation of the franchised business and provided them with access to its confidential and proprietary system for the operation of home care agencies.

28.     Defendants, in turn, agreed, among other things, to pay royalties and other fees owed in connection with their operation of the franchised business and comply with system standards.

29.     To induce HHFS to enter into the Franchise Agreement and provide defendants access to its confidential and proprietary systems, defendants agreed not to own, maintain, operate, engage in, or have any interest—whether directly or indirectly, for themselves or in connection with any other person or entity—in any business offering senior services, home care aide, home

maker, personal care aide assistance, companion services, medical services, personal emergency response products or services, or any other services offered by the franchised business, nor promote, sell, procure, provide or solicit referrals for the same, in or within fifteen miles of defendants' protected territory under the Franchise Agreement for a period of two years after the agreement terminates or expires.

30.     The Franchise Agreement allowed for defendants to renew it if, among other things, they were not in default of the agreement.

31.     Since defendants franchised business opened, they have operated it continuously as an authorized Home Helpers under the Franchise Agreement.

32.     In connection with the agreement's scheduled expiration of June 6, 2023, HHFS offered defendants the option to renew the Franchise Agreement for an additional ten-year term, so long as they cured certain defaults relating to the franchised business's mandatory insurance policies.

33.     Defendants have refused to cure the insurance coverage deficiencies.

34.     The Franchise Agreement expressly authorized HHFS to permit defendants to continue operating the franchised business after the scheduled expiration on a temporary month-to-month basis before the execution of a renewed agreement.

35.     Accordingly, after the Franchise Agreement's scheduled term expired in June 2023, defendants continued operating the franchised business on a month-to-month basis.

**<u>Defendants' Termination of the Franchise Agreement</u>**

36.     Despite defendants' success under the HHFS system, defendants have refused to satisfy the conditions required to renew the Franchise Agreement.

37.     Instead, defendants are transitioning their franchised business to an independent competitive business.

38.     For example, defendants recently stopped reporting sales and revenue to WellSky, the third-party vendor of the software application used by HHFS's franchisees for customer relationship management, scheduling, and billing.

39.     Moreover, Elena recently told WellSky that the Franchise Agreement has ended, but the franchised business will continue to operate under the name "Mission Era Homecare." She requested that WellSky communicate with defendants at a "missionera" email address, which she described as "our email."

40.     Defendants have also instructed HHFS's marketing team to deactivate defendants' "homehelpershomecare.com" emails and website.

41.     And defendants changed their contact email address on their Facebook page—which continues to identify them as a "Home Helpers and Direct Link" business in Connecticut—to the same "missionera" email address.

42.     In response to these actions, HHFS sent a notice to defendants dated March 4, 2024, reminding defendants that they continued to operate under, and be bound by, the terms of the Franchise Agreement and encouraging them again to renew and continue to operate as authorized HHFS franchisees. The letter further reminded defendants of their post-termination obligations, including the noncompetition covenant, in the event of termination.

43.     On March 12, 2024, HHFS received a letter from counsel on behalf of Elena—but not Victor or Missionera—informing HHFS that Elena was terminating the Franchise Agreement effective April 5, 2024. The letter advised that Elena would de-identify the business, change its telephone number, and cease using any of HHFS's intellectual property.

44. Given Elena's prior admissions to WellSky and her counsel's failure to respond to HHFS's demand that defendants comply with the noncompetition covenant, it is clear that defendants intend to continue operating the franchised business under a different name in the same territory after the Franchise Agreement terminates on April 5, 2024 in violation of their post-termination noncompetition commitments and obligations.

45. This same court recently enforced the same post-termination noncompetition covenant by entering a preliminary injunction against a Pennsylvania-based franchisee who similarly tried to convert the franchised business to an independent business after the franchise agreement expired. *See H.H. Franchising Sys., Inc. v. CareSmart Sols., Inc.*, No. 1:21-CV-575, 2022 WL 4274278, at *5-8 (S.D. Ohio Sept. 15, 2022) (holding that (i) "HHFS has established by clear and convincing evidence that the non-compete covenants are seeking to protect a legitimate business interest and are reasonable"; (ii) "HHFS would suffer irreparable harm without a preliminary injunction"; (iii) "Defendants' harm is self-inflicted"; and (iv) "the public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts").

46. HHFS has fully performed all of its obligations under the Franchise Agreement.

## COUNT I
## <u>DECLARATORY JUDGMENT</u>

47. HHFS incorporates the above paragraphs as if fully stated in this paragraph.

48. An actual, present, and justiciable controversy exists between HHFS and defendants concerning defendants' obligations under their noncompetition covenants in the Franchise Agreement and personal guarantees.

49. Under 28 U.S.C. § 2201, the Court may declare the rights and other legal relations of the parties, and that declaration shall have the force and effect of a final judgment or decree.

50.     HHFS is entitled to a declaratory judgment that defendants' continued operation of a competitive business under a different name after the Franchise Agreement terminates on April 5, 2024, would violate their noncompetition commitments and obligations.

## COUNT II
## FURTHER NECESSARY AND PROPER RELIEF

51.     HHFS incorporates the above paragraphs as if fully stated in this paragraph.

52.     Unless enjoined, defendants' intended misconduct will cause HHFS to suffer actual, substantial, and irreparable harm, including but not limited to the loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' franchised business and thereby maintain its market presence and the substantial goodwill generated by its decade-long presence in the market, diminution in the value of its proprietary and confidential know-how, information, and systems, and loss of competitive advantage.

53.     Further, HHFS will be irreparably harmed by defendants' actions, and monetary damages are an insufficient remedy in that they cannot fully and adequately compensate HHFS for the continuing damage to HHFS's goodwill and reputation, its proprietary and confidential information, its system stability, and its inability to refranchise the territory, all of which will be caused by defendants' violation of their noncompetition commitments.

54.     Put simply, unless the Court enjoins defendants' intended misconduct, HHFS will suffer harm for which it will have no adequate remedy at law.

55.     Under 28 U.S.C. § 2202, the Court may grant further necessary and proper relief based on its declaratory judgment.

56.     Based on the declaratory judgment it seeks, HHFS is entitled to further necessary and proper relief, including preliminary and permanent injunctive relief prohibiting defendants

from violating their noncompetition covenants under the Franchise Agreement and personal guarantees.

57.     HHFS is also entitled under the terms of the Franchise Agreement to recover the costs and expenses, including attorneys' fees, incurred in connection with this action.

## REQUEST FOR RELIEF

**WHEREFORE,** HHFS respectfully requests that the Court:

1. Enter a declaratory judgment in HHFS's favor;

2. Award further necessary and proper relief based on the declaratory judgment, including preliminary and permanent injunctive relief;

3. Award HHFS its costs and expenses, including reasonable attorneys' fees, incurred in connection with this action;

4. Enter such other relief to which HHFS may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

Dated: March 26, 2024                    Respectfully submitted,

/s/ Michael A. Galasso
Michael A. Galasso (0072470)
Robbins Kelly Patterson & Tucker, LPA
312 Elm Street, Suite 2200
Cincinnati, OH 45202
(513) 721-3330 | (513) 721-5001 fax
magalasso@rkpt.com

-and-

Aaron-Michael Sapp (*pro hac vice forthcoming*)
Charles J. Hoover (*pro hac vice forthcoming*)
CHENG COHEN LLC
363 West Erie Street, Suite 500
Chicago, Illinois 60654
asapp@chengcohen.com
charles.hoover@chengcohen.com