**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

H.H. FRANCHISING SYSTEMS, INC.,

      Plaintiff,

           v.

MISSIONERA LLC, *et al.*,

      Defendants

Case No. 1:24-cv-00160

Hopkins, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

On March 26, 2024, Plaintiff H.H. Franchising Systems ("HHFS") filed suit against a former franchisee and related guarantors, Defendants Missionera LLC and Vladimir and Elena Petrenko, seeking to enforce a non-compete provision in the parties' franchise agreement. On September 11, 2024, the presiding district judge referred this case to the undersigned. (Doc. 43). Currently pending is Defendants' renewed motion to dismiss Plaintiff's amended complaint. (Doc. 29).  For the reasons that follow, Defendants' motion should be DENIED.

## I.      Procedural Background

Plaintiff originally filed suit against Defendants to obtain a declaratory judgment regarding a noncompete provision in the parties' franchise agreement prior to termination of that agreement. Defendants moved to dismiss under Rule 12(b)(6), Fed. R. Civ. P., in part on grounds that Plaintiff had failed to attach the franchise agreement or the contractual clause as to which it sought specific enforcement. In the alternative, Defendants sought a more definite statement. (Doc. 16).

In response to Defendants' first motion to dismiss, Plaintiff filed an amended complaint in which it revised its claims. The amended complaint alleges that Defendants

1

formally terminated the franchise agreement on April 5, 2024, shortly after Plaintiff filed suit. (Doc. 17). Instead of seeking a declaratory judgment, the amended complaint seeks specific performance of post-termination non-compete provisions as well as monetary damages for prior and ongoing breaches of the franchise agreement. In light of the filing of the amended complaint, the Court denied Defendants' first motion to dismiss as moot. (Doc. 20). Thereafter, Defendants filed an answer to amended complaint. (Doc. 24).

In addition to their amended complaint, Plaintiff filed a motion seeking preliminary injunctive relief to enforce the non-compete agreement. (Doc. 18). After the Court set that motion for a hearing, the parties filed a stipulated agreement to preliminary injunctive relief, which the Court adopted by Order dated July 22, 2024. (Docs. 35, 36). The Order generally enjoins Defendants from "owning, maintaining, operating, engaging in, or having any direct or indirect interest in any business offering senior services, home care aide, home maker, personal care aide assistance, companion services, medical services, personal emergency response products or services or promoting, selling, procuring, providing, or soliciting referrals for such services, in or within fifteen miles" of the original franchise business in Connecticut. (Doc. 36 at ¶1). The Order includes exceptions for services provided to customers within the fifteen mile zone "provided that those customers were referred to [Defendants] by the Agency on Aging and that the services provided…are paid for by Medicaid or Medicare and (b) the parents of Elena Petrenko and Vladimir Petrenko." (*Id.* at ¶2). Additionally, the injunction includes terms relating to the use of the phone numbers associated with the former Home Helpers franchise. (*Id.* at ¶¶3-4).

Because the parties agreed only to preliminary injunctive relief, the Order applies only during the time that this lawsuit remains pending. Underscoring that point, the stipulated Order states:

> [T]he entry of this order shall not constitute an admission by defendants that they committed any unlawful act - which issue plaintiff and defendants continue to dispute - and neither side is awarded costs and expenses in connection with entry of this Order. This ruling is without prejudice to the parties' right to seek their respective costs and expenses, including work in connection with plaintiff's preliminary injunction motion, at the conclusion of this matter.

(*Id.*).

Two days prior to the date that the parties filed their stipulated agreement, Defendants filed a new "motion to dismiss for failure to state a claim." (Doc. 29). Defendants' second motion to dismiss asserts that the noncompete agreement contained within the franchise agreement is governed by Connecticut law, and that Connecticut law expressly prohibits the enforceability of noncompete agreements relating to the home health care business as against public policy. Plaintiff filed a response in opposition to Defendants' motion, to which Defendants have filed a reply. (Docs. 39, 42).

## II.     Standard of Review

Similar to Defendants' first motion to dismiss, the second motion to dismiss asserts that Plaintiff has failed to state a claim under Rule 12(b)(6), Fed. R. Civ. P. However, based on the legal grounds asserted in the motion and because Defendants have already answered the amended complaint, the motion is more properly considered as a motion for judgment on the pleadings under Rule 12(c). In the interests of justice, the undersigned construes Defendants' motion accordingly.

That said, the standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as the standard for a motion to dismiss under Rule 12(b)(6). *See Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir. 1987). Unlike a Rule 56 motion that requires the Court to evaluate evidence of record, a motion filed under Rule 12 limits review to the pleadings themselves. When ruling on a defendant's Rule 12(c) motion, a district court "must construe the complaint in the light most favorable to the plaintiff [and] accept all of the complaint's factual allegations as true." *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 512 (6th Cir. 2001) (citations omitted). Thus, a court may not consider material outside of the pleadings when ruling on a motion under Fed. R. Civ. P. 12(c). *See Hickman v. Laskodi,* 45 Fed. Appx. 451, 454 (6th Cir. 2002). Therefore, the Court first reviews the facts alleged in the amended complaint.

### III.    Facts Alleged in Amended Complaint

Plaintiff is an Ohio corporation and operator of the Home Helpers brand of franchised home care businesses. Defendants are alleged to be a former franchisee and individual guarantors of a Home Helpers business in Connecticut. (Doc. 17, ¶1). As part of its franchise agreement, HHFS required Defendants to agree to several noncompete provisions. Plaintiff alleges that under those provisions, Defendants agreed not to operate a competitive business both during the term of the agreement and for two years after termination of the franchise. (*Id.,* ¶2). Defendants allegedly terminated the franchise agreement on April 5, 2024, but violated their noncompete agreement by continuing to operate their formerly franchised business in the same territory, offering services to the same customers, under the name "Mission Era Homecare." (*Id.,* ¶¶ 4-5). Plaintiff alleges that during its investigation of Mission Era Homecare, HHSFS discovered that Defendants

had been operating two additional competing home care businesses "for years in violation of the in-term noncompetition covenant." (*Id*., ¶6). Plaintiff seeks to enforce the noncompete provisions in the future, and to recover damages resulting from Defendants' alleged past violation(s).

### IV.    Analysis

Defendants seek judgment as a matter of law based on the theory that the noncompete provisions are presently illegal and unenforceable under Connecticut law. The franchise agreement in question was executed on June 6, 2013. (*See* Doc. 18-3, PageID 102). The original agreement permitted Defendants the right to own and operate a Home Helpers business in and around Fairfield County, Connecticut for a ten-year term. (*Id.*)  Six years into that term, Connecticut enacted a statute entitled "Covenants not to compete, homemaker, companion, home health services. Prohibition established." The text of the 2019 statute reads as follows:

> For purposes of this section "covenant not to compete" means any contract or agreement that restricts the right of an individual to provide homemaker, companion or home health services (1) in any geographic area of the state for any period of time, or (2) to a specific individual. Any covenant not to compete is against public policy and shall be void and unenforceable.

Conn. Gen. Stat. Ann. § 20-681 (effective June 26, 2019 through May 23, 2023). Effective May 24, 2023, the title of § 20-681 remained the same but its text was amended to read:

> Any covenant not to compete is against public policy and shall be void and unenforceable.

*Id*. At the time of the 2023 amendment, virtually all of the original text (including the definition of "covenant not to compete") was moved to Conn. Gen. St. § 20-470.[1]

---

[1]Conn. Gen. St. § 20-670 was revised to define "Covenant not to compete" to mean "any agreement or contract that restricts the right of an individual to provide companion services, home health services or

Plaintiff disputes the applicability of the relatively new Connecticut law on multiple grounds. First, Plaintiff asserts that Defendants have waived their right to raise this defense because Defendants previously conceded, in their memorandum in opposition to a preliminary injunction, that Ohio law applies. (*See* Doc. 25, PageID 231, "Because the franchise agreement provides that Ohio law governs and the parties do not contend otherwise, the court must look to Ohio law."). Similarly, in Defendants' answer to the amended complaint, Defendants made no mention of Connecticut law. But the undersigned declines to find waiver on the facts presented. Unlike other cases in which courts have found a waiver, this case remains in its infancy, and Plaintiff can show no prejudice from Defendants' slightly-belated assertion of the defense.

Nevertheless, the undersigned rejects as unpersuasive Defendants' position that Connecticut law rather than Ohio law applies.[2] "[A] federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits." *See Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014). Under Ohio law, the Court is required to first review the choice-of-law specified by the parties in their contract.

Paragraph 18.3 of the franchise agreement makes clear that the parties intended Ohio law to control:

> 18.3 Construction. This Agreement was accepted and executed by Franchisor in Ohio. Except to the extent governed by the U.S. Trademark Act of 1946, the Federal Arbitration Act, **the laws of the State of Ohio** (without reference to Ohio conflict of laws principles) **govern all aspects of this agreement**, excluding any law regulating the sale of franchises or business opportunities, or governing the relationship between a franchisor and a franchisee, unless the jurisdictional requirements of such laws are met independently without reference to this section; provided, however, that if any of the covenants contained in Article 15 of this Agreement would not

---

homemaker services (A) in any geographic area of the state for any period of time, or (B) to a specific individual."

[2]Defendants make no claim that the noncompete provision is unenforceable under Ohio law.

be enforceable under the laws of Ohio and the franchised business is located outside of Ohio, then such covenants shall be interpreted and construed under the laws of the state in which the franchised business is located. Ohio law shall prevail in the event of any conflict of law, except as specifically provided otherwise by any applicable state franchise investment laws, rules or regulations. If any provision of this Agreement relating to termination, nonrenewal or assignment of the franchise or choice of law, jurisdiction or venue is inconsistent with any applicable state franchise investment law, rules or regulations, such applicable state law shall apply. Any addendum to this Agreement required by the regulatory authorities of any state for the purpose of disclosing salient provision of such state's law is hereby made a part hereof.

(Doc. 18-3, PageID 162, § 18.3 (emphasis added)).[3]

While conceding the general applicability of Ohio law, Defendants cite to an exception embedded in the quoted contractual choice-of-law provision. Specifically, Defendants highlight this sentence: "If any provision of this Agreement relating to termination, nonrenewal or assignment of the franchise or choice of law, jurisdiction or venue is inconsistent with any applicable state franchise investment law, rules or regulations, such applicable state law shall apply."

Defendants' argument is unpersuasive because the noncompete provisions do not satisfy either of the two preconditions required for Connecticut law to apply.[4] First, in order for the exception to apply, the noncompete provisions must be terms "relating to termination…of the franchise or choice of law, jurisdiction or venue." Notably, the amended complaint alleges that Defendants violated noncompete provisions during the time that the franchise was still in place, prior to termination of the franchise. Indeed,

---

[3]Although the franchise agreement is not attached to Plaintiff's amended complaint, it was filed as an exhibit to Plaintiff's motion for a preliminary injunction, and may be reviewed because it is integral to the complaint.
[4]The undersigned finds similarly unpersuasive Defendants' strained analogy to California minimum wage laws for workers employed in that state by out-of-state companies. Defendants urge this Court to ignore the parties' contractual choice-of-law entirely on the theory that Connecticut's "public policy" against a narrowly defined set of noncompete agreements is as paramount to Connecticut's public policy as minimum wage laws are to California.(*See* Doc. 42, PageID 419). Simply put, the undersigned rejects the analogy.

section 15.2 of the parties' agreement contains covenants that apply *during* the term of the franchise and therefore are unrelated to termination (*See* Duc. 18-3, PageID 157). True, section 15.3 includes additional noncompete provisions that are triggered only after termination of the franchise agreement. But because section 15.3 imposes *post-termination* terms, those provisions also fall outside the narrow scope of terms "relating to termination, nonrenewal or assignment of the franchise."

In addition, even if section 15.3 of the franchise agreement were considered as including terms "relating to termination," the exception to the Ohio choice-of-law provision kicks in only if the noncompete provisions are "inconsistent with… state franchise investment law." Connecticut "franchise investment law" consists of a specific body of statutes. *See generally,* Connecticut Franchise Act ("CFA"), Gen Stat. §§ 42-133e through 42-133h). The general statute that Defendants now seek to enforce against Plaintiff does not fall within the CFA. In other words, the exception to the application of Ohio law does not apply here because the noncompete provisions at issue are not "inconsistent with …[Connecticut] franchise investment law."

Additional reasons preclude the application of the 2019 or 2023 versions of the Connecticut statute to the pre-existing franchise agreement. For example, there is no indication that the statute was intended to be retroactively enforced in order to invalidate existing contracts that were legally enforceable when made.[5] Under Connecticut law, statutes silent on retroactive applicability are presumed to apply only prospectively. *Andersen Consulting, LLP v. Gavin*, 767 A.2d 692, 704 (Conn. 2001) (citations omitted).

---

[5]As Plaintiff points out, Defendants' citation to a proposed Federal Trade Commission ban on noncompete agreements, cited in opposition to Plaintiff's motion for preliminary injunctive relief, misses the mark for similar reasons. The FTC noncompete ban was enacted in 2023 but was not scheduled to take effect until September 2024. *See* 16 C.F.R. § 910.6.

In addition, the express language of the statute appears to ban noncompete agreements that would prohibit "an individual" from providing home health care services (or similar personal services). Narrowly construed, the language would not bar noncompete provisions that prohibit a franchised <u>business</u> (or a former franchisee or guarantor of the franchisee) from engaging in a competing business that provides home health care services. In this respect, the undersigned finds persuasive the similar statutory analysis of the Connecticut trial court in *Am Holdco, Inc. v. Cappelletti* (No. 2020-0334) (Doc. 39-1, Transcript at 74-75, PageID 393-394).

## IV.    Conclusion and Recommendations

For the reasons discussed, **IT IS RECOMMENDED THAT** Defendants' motion to dismiss be **DENIED.**

_s/Stephanie K. Bowman_____
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

H.H. FRANCHISING SYSTEMS, INC.,

    Plaintiff,

        v.

MISSIONERA LLC, *et al.*,

    Defendants

Case No. 1:24-cv-00160

Hopkins, J.
Bowman, M.J.

**NOTICE**

Under Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).