**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| **H.H. FRANCHISING SYSTEMS, INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **MISSIONERA LLC, VLADIMIR PETRENKO, and ELENA PETRENKO,** <br><br> Defendants. | Case No. 1:24-cv-00160 <br><br> Hon. Jeffery P. Hopkins |

**H.H. FRANCHISING SYSTEMS, INC.'S RESPONSE TO
DEFENDANTS' OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff H.H. Franchising Systems, Inc. ("HHFS"), by its attorneys, submits the following response to defendants' objections to the November 22, 2024 report and recommendation ("R&R") for the denial of defendants' motion to dismiss.

**INTRODUCTION**[1]

Defendants' motion to dismiss asks the Court to ignore the parties' choice of Ohio law and instead apply a Connecticut statute in a way that no court has applied it to invalidate both the in-term and post-termination noncompetition covenants in the franchise agreement at issue here. Such an outcome, if followed by other courts, would effectively invalidate all in-term and post-termination noncompetition covenants in franchise agreements between franchisors of in-home care franchise systems and their Connecticut-based franchisees. Absent enforceable in-term noncompetition covenants in particular, franchisors would be unable to prevent franchisees from,

---

[1] Defined terms herein have the meanings set forth in HHFS's Response in Opposition to Defendants' Motion to Dismiss. (Dkt. 39.)

among many other things, simultaneously operating independent in-home care businesses and funneling certain clients to their independent businesses to avoid paying royalites and other fees owed under their franchise agreements—like HHFS alleges that defendants have done here.

To avoid this and other absurd outcomes, the R&R properly enforced the plain language of the parties' agreement that Ohio law applies to this dispute. In addition, the R&R held that even if the Court reached the Connecticut statute, it would not invalidate the restrictive covenants at issue here. Because defendants have failed to identify any error in the R&R, the R&R should be adopted in full to deny defendants' motion to dismiss with prejudice.

## **ARGUMENT**

"Under Fed. R. Civ. P. 72(b)(3), district courts review an R&R de novo after a party files a timely objection." *Deters v. Hammer*, 568 F. Supp. 3d 883, 886 (S.D. Ohio 2021); *see also* 28 U.S.C. § 636(b)(1)(C). The objection process is "not designed to allow a litigant merely to rehash the arguments that he made below, hoping for a fresh bite at the judicial apple." *Deters*, 568 F. Supp. 3d at 887 (citing *Richards v. Colvin*, No. 2:12-cv-748, 2013 WL 5487045, at *1 (S.D. Ohio Sept. 30, 2013)). Likewise, the objection process does not allow a party to raise new arguments or issues not presented to the magistrate. *Murr v. United States*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) (citations omitted).

Here, defendants make two objections to the R&R:

(1) The R&R misapplies Ohio choice-of-law principles to determine that Ohio law, and not Connecticut law, should be applied to enforcement of the noncompete provisions of the Franchise Agreement; and

(2) The R&R incorrectly concludes that Connecticut law does not prohibit enforcement of noncompetition agreements of the kind found in the Franchise Agreement.

(Dkt. 45 at PageID 437.) For the following reasons, these objections should be overruled, and the Court should adopt the R&R in full.

**I.        Defendants cannot raise new arguments in their objections.**

Defendants' argument for the application of Connecticut law has repeatedly shifted over the course of briefing their motion to dismiss. In their moving brief, their argument relied entirely on the alleged plain-language application of the Agreement's choice of law provision. (Dkt. 29 at PageID 265 ("[T]here are limitations to such claims if enforcing a law in Ohio would violate a law in Connecticut, and the contract recognized that under such circumstances, Connecticut law would apply.").) HHFS's response highlighted defendants' erroneous reading of the choice of law provision on which their entire argument relied. (Dkt. 39 at PageID 308-310.) The R&R agreed. (Dkt. 44 at PageID 432 ("Paragraph 18.3 of the franchise agreement makes clear that the parties intended Ohio law to control . . .").)

In HHFS's opposition to defendants' motion to dismiss, it further noted that defendants had not made, and therefore had waived, any argument that the parties' choice of Ohio law should be disregarded under the choice of law analysis set forth in Section 187(2) of the Restatement (Second) of Conflict of Laws. (Dkt. 39 at PageID 310-313.) In their reply brief, defendants abandoned their plain language argument, confusingly analogized the covenants at issue in this matter to California's minimum wage laws, and made passing reference (without citation to any authority) to the covenants' alleged illegality under Section 202 of the Restatement. (Dkt. 42 at PageID 418-421.) Indeed, defendants' reply brief titled that new section of its brief, "Choice of law is not relevant to the question of enforcement of the noncompetition provision." (*Id.* at PageID 418.) The R&R rejected defendants' "strained analogy" to California minimum wage laws as a basis for ignoring the parties' contractual choice of law provision. (Dkt. 44 at PageID 433, n.4.) The R&R did not engage in any analysis under Section 187(2) of the Restatement given that

3

defendants had not raised any such arguments and, on the contrary, had emphasized that choice of law principles are "not relevant" to their motion.

In a complete reversal, defendants now argue for the first time in their objections to the R&R that the parties' choice of Ohio law should be disregarded under the choice of law exceptions set forth in Section 187(2)(b) of the Restatement (Second) of Conflicts of Laws. (*Compare* Dkt. 42 at PageID 418 ("Choice of law is not relevant to the question of enforcement of the noncompetition provision") *with* Dkt. 45 at PageID 439 ("Ohio Choice-of-Law principles favor applying Connecticut law to the noncompetition provisions of the Franchise Agreement.").) That new argument, moreover, relies entirely on a case that defendants did not cite in either their moving brief or reply brief and cannot be made for the first time in their objections to the R&R. *Murr*, 200 F.3d at 902, n.1 (noting that a party waives an argument first raised in objection to report and recommendation, as the magistrate does not have "the opportunity to consider the issue."). Indeed, by not raising this argument in their moving brief, defendants were barred from raising the argument in their reply brief as well (which they did not do). *See, e.g., Shepard and Assocs., Inc. v. Lokring Tech., LLC*, No. 1:20-CV-02488, 2022 WL 2237810, at *5 (N.D. Ohio June 22, 2022) (assertions regarding choice of law analysis made for the first time in moving party's reply brief were waived); *see also Gant v. Elam*, No. 1:21-cv-117, 2022 WL 980690, at *3 (S.D. Ohio Mar. 31, 2022) ("But they did not raise this argument in their motion to dismiss. Our cases have repeatedly recognized that 'arguments raised for the first time in a party's reply brief are waived.'" (citation omitted)); *Thompson v. DePuy Orthopaedics*, Inc., No. 1:13-CV-00602, 2015 WL 7888387, at *11, n.9 (S.D. Ohio Dec. 4, 2015) ("The Court need not address DePuy's argument that it is not the manufacturer, as issues raised for the first time in a reply brief are deemed waived."

(citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)); *Tonguette v. Sun Life & Health Ins. Co. (U.S.)*, No. 2:12-cv-00006, 2013 WL 1818620 (S.D. Ohio Apr. 29, 2013)).

By raising this argument for the first time in their objections to the R&R, defendants are one step further removed from their first waiver by not raising this argument in their moving brief. Because defendants' new argument and supporting authority was not included in the briefing before Magistrate Judge Bowman, it is improper to object to the R&R on that basis.

II.     **Defendants' new argument does not change the R&R's outcome.**

In any event, defendants' new argument in support of their vain effort to avoid the application of Ohio law relies entirely on their attempt to analogize the Connecticut statute here with a much different Texas statute not discussed in their motion or reply. In response to defendants' related, but distinct, effort to analogize the Connecticut statute at issue here to California's minimum wage laws, the R&R "rejected" the "theory" that the Connecticut statute's alleged application "against a narrowly defined set of noncompete agreements is as paramount to Connecticut's public policy as minimum wage laws are to California." (Dkt. 44 at PageID 433 n.4.)

Defendants now try the same analogy again by arguing that the Connecticut statute's alleged application against a narrowly defined set of noncompete agreements is as paramount to Connecticut's public policy as the Texas statute that codifies the enforceability of ***all*** noncompetition agreements under Texas law is to Texas. Indeed, the case on which this new argument relies emphasized that the court was applying Texas law to the noncompete at issue over the parties' choice of Ohio law, in part, because courts in Texas, including the Texas Supreme Court, had "repeatedly found" that the Texas statute governing noncompetition covenants in all agreements "constitutes a fundamental policy of Texas." *See Power Marketing Direct, Inc. v. Clark*, No. 2:05-cv-767, 2006 WL 2583342, at *5 (S.D. Ohio Sept. 6, 2006) (citations omitted).

5

Here, on the other hand, defendants have not cited a single decision from any court—let alone a Connecticut court—even analyzing the statute they ask this Court to find to be a "fundamental policy" of the state of Connecticut. Indeed, this is a stark contrast from the Texas statute addressed in *Clark,* which has been cited in hundreds of cases.

Notably, just weeks after the *Clark* decision was entered, this same Court, analyzing the same Texas noncompete statute, declined to look beyond the parties' contractual choice of law in another case involving the same plaintiff. *Power Marketing Direct, Inc. v. Pagnozzi*, No. C2-05-766, 2006 WL 2849815 (S.D. Ohio Sept. 29, 2006). The court in *Pagnozzi* acknowledged the *Clark* decision, noting that "[w]hile the Court always gives great deference to decisions by other branches of this court," even a Texas court analyzing the same agreement did so under Ohio law—the law chosen under the parties' agreement. *Id.* at *12 n. 11. This was, of course, in spite of the finding in *Clark* that the Texas statute was a "fundamental policy" of the state of Texas. *Id.* at *6 ("The Court therefore further concludes that an Ohio court would not apply the Restatement's § 187(2)(b) exception to avoid the parties' choice of Ohio law to govern interpretation of the agreement in this case.").

Put simply, the *Clark* decision has not been followed by other courts as a persuasive basis for disregarding the parties' choice of Ohio law in favor of applying a Texas statute that governs the enforceability of all noncompetition covenants under Texas law. That decision hardly supports defendants' argument for the Court to disregard the parties' choice of Ohio law in favor of an exceedingly narrower Connecticut statute here.

**III.    The R&R properly applied Ohio choice of law principles.**

"Under Ohio law, contractual choice-of-law provisions are valid and enforceable." *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801, 805 (N.D. Ohio 2021) (quoting *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F.

6

Supp. 2d 925, 932 (S.D. Ohio 2012)). Indeed, "Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties." *Power Marketing Direct, Inc. v. Pagnozzi*, No. C2-05-766, 2006 WL 2849815, at *4 (S.D. Ohio Sept. 29, 2006) (quoting *Tele–Save Merchandising Co. v. Consumers Distributing Co.*, Ltd., 814 F.2d 1120, 1122 (6th Cir. 1987)).

Here, the R&R applied these principles to find that Ohio law governs this dispute for two reasons. First, Section 18.3 of the Agreement requires the application of Ohio law "without reference to Ohio conflict of law principles." (Agreement, ECF No. 18-3 at PageID 162, § 18.3.) Defendants' motion relies entirely on one of the two exceptions to the application of Ohio law identified in that provision, which is limited to a provision relating to "termination, nonrenewal or assignment…" which is "inconsistent with any **applicable state franchise investment law**…".[2] (Dkt. 29 at PageID 266.) The R&R noted that this exception does not apply to the statute at issue here, Conn. Gen. Stat. § 20-681, because it is not part of any "applicable state franchise investment law," specifically, the Connecticut Franchise Act, Conn. Gen. Stat. §§ 42-133e through 133h. (Dkt. 44 at PageID 434; *see also* Dkt. 39 at PageID 308-310.) The R&R therefore rejected defendants' argument and properly found that Ohio law governs as provided in the Agreement.

Second, defendants' motion simply lacks *any* choice of law analysis that would be necessary to look past the parties' agreed upon choice of law, instead relying entirely on the inapplicable franchise investment law exception in Section 18.3 of the Agreement. (Dkt. 29 at PageID 265-266 (highlighting only the franchise investment law exception).) In fact, in their reply

---

[2] As the R&R notes, defendants did not argue under the other exception. (Dkt. 44 at PageID 432 n.2.)

brief, defendants argue that "[c]hoice of law is not relevant to the question of enforcement of the noncompetition provision." (Dkt. 42 at PageID 418.)[3]

For these reasons, defendants' objection to the finding that Ohio law governs the parties' dispute pursuant to the express terms of the Agreement should be overruled.

**IV.     The R&R properly found that the Connecticut statute does not apply.**

Even if the Court were to reach the Connecticut statute, it is nevertheless inapplicable for the reasons identified in the R&R. First, the statute is silent as to whether it applies retroactively. As the R&R states, "[u]nder Connecticut law, statutes silent on retroactive applicability are presumed to apply only prospectively." (Dkt. 44 at PageID 434 (citing *Andersen Consulting, LLP v. Gavin*, 767 A.2d 692, 704 (Conn. 2001).)

Defendants object to this rule by pointing to three other statutes that specify a time period for application. But each of those statutes set a date for its ***prospective*** application. *See* Conn. Gen. Stat. § 20-14p(b)(2),(3) (covenants not to compete by a physician on or after July 1, 2016 and on or after October 1, 2023); Conn. Gen. Stat. § 20-12k (covenants not to compete with a physician assistant entered into on or after October 1, 2023); Conn. Gen. Stat. § 20-101d (covenants not to compete with advanced practice registered nurses entered into on or after October 1, 2023). Defendants object to the R&R based on the fact that these statutes are expressly "time-bound," arguing that somehow requires the Court to apply Conn. Gen. Stat. § 20-681 retroactively. That is, of course, the reverse of what is required by the law. Section 20-681's silence on the issue means

---

[3] Defendants went on in their reply brief to lay out the factors considered under Sections 187 and 188 of the Restatement (Second) "to the extent" such an analysis is necessary without citing to a single allegation in the FAC. (Dkt. 42 at PageID 419-421.) That analysis simply brushes over the fact intensive nature of the required analysis under the Restatement, which courts often refuse to do at the pleading stage. (*See* Dkt. 39 at PageID 310-311 (collecting cases).) Moreover, they waived that argument by not making it in their motion and could not do so for the first time on reply. (*See id.* at PageID 313-314 (collecting cases).)

it is presumed to apply retroactively. This was a valid basis to find the statute does not apply, and defendants cite no law evidencing any error in the R&R doing so.

Second, Magistrate Judge Bowman pointed to the plain language of the statute and found that it applies only to individuals performing home care services, not parties in the business of providing home care services. (Dkt. 44 at PageID 435.) The statute at issue expressly limits the definition of "covenant not to compete" to mean any contract that "restricts the right of an ***individual*** to provide companion services, home health services or homemaker services (A) in any geographic area of the state for any period of time, or (B) to a specific individual."[4] Conn. Gen. Stat. §§ 20-670(4) (emphasis added). There are simply no allegations in the FAC that defendants, individually, are performing home care services.[5] And as laid out in HHFS's response to the motion to dismiss, it is not seeking to enforce the noncompetition covenants in that way. (Dkt. 39 at PageID 316.) The noncompetition covenants HHFS seeks to enforce against defendants are to prevent them from engaging in the ***business*** of providing home care services, which is consistent with the plain language of the statute as determined in the R&R.

Indeed, Magistrate Judge Bowman found this very same statutory analysis in *Am Holdco, Inc. v. Cappelletti* to be persuasive. (*See* Dkt. 39-1, Transcript of Oral Argument, *Am Holdco, Inc. v. Cappelletti* (No. 2020-0334).) In that case, the court emphasized that the defendant was "not alleged to be providing [home care] services personally," but was instead "alleged to be providing financial and advisory services to a company that, in turn, employs individuals who provide homemaker companion or home health services." (*Id.* at PageID 393-394.) For that reason, the court found the statute did not apply. (*Id.*)

---

[4] As HHFS pointed out in its response, defendants omitted this definition from their motion.
[5] Additionally, none of defendants' employees are defendants in this action, nor does HHFS have any noncompetition agreements with any of defendants' employees.

In their objections, defendants point out that the R&R incorrectly cites the *Am Holdco* transcript as a Connecticut decision, when it was actually decided by a Delaware Chancery Court. This distinction only emphasizes that there is no precedent for what defendants ask this Court to do. It bears repeating that defendants fail to cite even a single case applying the statute in the way they ask this Court to. In fact, the *Am Holdco* decision is the only decision HHFS has been able to locate where Conn. Gen. Stat. § 20-681 was even analyzed. That court expressly rejected the same argument made by defendants here, and it was proper for that analysis to be considered "persuasive" in the R&R. (Dkt. 44 at PageID 435.)

## CONCLUSION

HHFS respectfully requests that the Court adopt the report and recommendation of Magistrate Judge Bowman, deny defendants' motion to dismiss with prejudice, and for any further relief the Court deems just and proper.

Dated: December 19, 2024          Respectfully submitted,

s/ Charles J. Hoover
Aaron-Michael Sapp (*pro hac vice*) – Trial Attorney
Charles J. Hoover (*pro hac vice*) – Trial Attorney
CHENG COHEN LLC
363 West Erie Street, Suite 500
Chicago, Illinois 60654
(312) 243-1701
asapp@chengcohen.com
charles.hoover@chengcohen.com

-and-

Michael A. Galasso (0072470)
Robbins Kelly Patterson & Tucker, LPA
312 Elm Street, Suite 2200
Cincinnati, OH 45202
(513) 721-3330 | (513) 721-5001 fax
magalasso@rkpt.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 19, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

s/ Charles J. Hoover