UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

H.H. FRANCHISING SYSTEMS, INC.,

    Plaintiff,

v.

MISSIONERA LLC, et al.,

    Defendants.

Case No. 1:24-cv-160

Hopkins, J.
Bowman, M.J.

**MEMORANDUM ORDER**

On March 26, 2024, Plaintiff H.H. Franchising Systems ("HHFS") filed suit against a former franchisee and related guarantors, Defendants Missionera LLC and Vladimir and Elena Petrenko, seeking to enforce a non-compete provision in the parties' franchise agreement. Initially referred to the undersigned for disposition of all pretrial matters, (Doc. 43), the case is currently referred only for discovery-related issues. (Doc. 56.)

On November 25, 2025, the parties appeared through their respective counsel for an informal discovery conference, during which they jointly requested the Court's ruling on a pending dispute. For the reasons discussed below, the Court will GRANT IN PART Plaintiff's construed oral motion to compel Defendants to supplement responses to Plaintiff's written discovery requests.

    **I.**    **Procedural Background**

In an amended complaint, Plaintiff alleges that Defendants terminated a franchise agreement relating to a home health care business on April 5, 2024, shortly after this suit was filed. At the time of termination, Defendants Elena and Vladimir Petrenko continued

1

to operate their formerly franchised business, Home Helpers, under the name "Mission Era Homecare" (hereafter "MEH"). (*See* Doc. 17, ¶ 5, PageID 61.) The amended complaint seeks specific performance of post-termination non-compete provisions as well as monetary damages for prior and ongoing breaches of the franchise agreement.

In a Stipulated Order filed on July 22, 2024, Defendants agreed to preliminary injunctive relief while this lawsuit remains pending. (Docs. 35, 36.) The Order enjoins Defendants from "owning, maintaining, operating, engaging in, or having any direct or indirect interest in any business offering senior services, home care aide, home maker, personal care aide assistance, companion services, medical services, personal emergency response products or services or promoting, selling, procuring, providing, or soliciting referrals for such services, in or within fifteen miles" of the original franchise business in Connecticut. (Doc. 36 at ¶1). But the Order includes exceptions for services provided to customers within the fifteen mile zone "provided that those customers were referred to [Defendants] by the Agency on Aging and that the services provided…are paid for by Medicaid or Medicare and (b) the parents of Elena Petrenko and Vladimir Petrenko." (*Id*. at ¶2). The injunction includes other terms relating to the use of the phone numbers associated with the former franchise. The order states that its entry "shall not constitute an admission by defendants that they committed any unlawful act" and is "without prejudice to the parties' right to seek their respective costs and expenses" at the conclusion of litigation. (*Id.* at ¶¶3-4).

On July 18, 2024, Defendants moved to dismiss Plaintiff's amended complaint. In a Report and Recommendation ("R&R") filed on November 22, 2024, the undersigned recommended denial of that motion after concluding that Ohio law applies, and that a


Connecticut law relied on by Defendants does not apply. (Doc. 44.) Overruling Defendants' objections, the presiding district judge adopted the R&R on March 27, 2025, and thereafter entered a qualified protective order. (Doc. 47, 49.) On May 15, 2025, the Court entered a Calendar Order. (Doc. 50.) Since then, several deadlines have lapsed, while others remain pending and/or were extended on November 12, 2025.

On November 25, 2025, the undersigned conducted a telephonic conference on a pending discovery dispute. Charles J. Hoover appeared on behalf of Plaintiff and John H. Phillips appeared on behalf of the three Defendants.

## II. The Discovery Dispute

During the telephonic conference,[1] Plaintiff represented that Defendant Vladimir Petrenko formed an independent, competitive business called Managed Home Care LLC ("MHC") more than five years ago. MHC allegedly offers the same services previously offered by Defendants' franchised business in and around the same territory.[2] (*See also*, Am. Complaint, Doc. 17, ¶ 52, PageID 68, alleging that Elena and Vladimir "have been operating…[MHC] in violation of the in-term noncompetition covenant and post-termination noncompetition covenant.")

Much of the parties' dispute pertains to Plaintiff's requests for information about MHC. Plaintiff's specifically seek to compel: (1) supplemental discovery responses and the production of documents from Defendants regarding MHC; (2) the production of

---

[1]In addition to their oral arguments, the Court invited both parties to submit short letters or memoranda *in camera*, with copies provided to opposing counsel. Prior to the conference, Plaintiff tendered a letter outlining the dispute and including relevant correspondence dated August 1, 2025. Defendants did not submit any pre-conference materials.

[2]Plaintiff implies that one or more Defendants may have continued to have some control over MHC even after that entity was sold or otherwise transferred to the Petrenko's son. To date, however, Plaintiff has not sought to add MHC as an additional party.

documents from MHC in response to a subpoena issued directly to that entity; and (3) an eight week extension of all current pretrial deadlines.

Defendants do not dispute that Vladimir Petrenko was the sole member of MHC when it was formed, until shortly before Plaintiff filed this lawsuit. But in February 2024, Vladimir allegedly transferred his entire ownership of MHC to his adult son, who apparently resides at the same Connecticut home address. Defendants' ongoing business MEH and MHC are operated from the same residential address, and the two entities contract with the same answering service. Defense counsel further admits that Vladimir assists "with payroll calculations" for MHC. But defense counsel represents that apart from that "volunteer" assistance, it is his "understanding" that neither Vladimir nor Defendant Elena Petrenko have anything to do with MHC, which ostensibly is an entirely separate entity in which they have retained no ownership interest. Defense counsel is adamant that he does not represent MHC and that his clients cannot be compelled to produce its separate business records.[3]

### III. Analysis

Plaintiff served its initial discovery requests more than a year ago on October 8, 2024. Many of the requests sought discovery relating to MHC as well as the ongoing business that Defendants admittedly own and operate, MEH. Defendants did not initially timely respond to any of the requests.

Plaintiff did not at first protest the delay, conceding that discovery was paused while the Defendants' motion to dismiss was pending. When Defendants at last served

---

[3] Defense counsel admits to forwarding a request for a two-week extension to respond to a subpoena served on MHC, but asserts that he did so merely as a courtesy, without formation of any attorney-client relationship. It is unclear whether MHC is otherwise represented by counsel.

4

their responses, however, a dispute immediately arose concerning the adequacy of those responses. Among the problems identified by Plaintiff is the fact that Defendants produced no documents.

In the meantime, during the months in which discovery between the parties had remained "paused," Plaintiff had issued third party subpoenas. One of those subpoenas was directed to MHC. MHC transmitted a request for a brief extension of time through defense counsel, but never responded to the subpoena.

### A. Plaintiff's Request for Supplemental Production from Defendants

The Court will grant Plaintiff's construed motion to compel the Petrenko Defendants to supplement their discovery responses, consistent with the deficiencies identified in Plaintiff's counsel's letter of August 1, 2025. Defendants also should verify their Interrogatory answers under oath.

Defendants must produce all responsive documents relating to Mission Era Homecare, their ongoing business. During the conference, defense counsel argued that because Defendants' business is paid by Medicaid wire transfers, Defendants have no responsive "paper" documents. But Plaintiff's Requests seek all relevant bank statements or other records, including any and all electronic records that would reflect or confirm the Medicaid transfers.

Defendants also must produce their personal tax returns as well as related business tax returns, including the returns of MEH through the 2024 tax year and any returns of MHC during Vladimir's ownership of that entity. That said, Defendants need not produce duplicates of tax returns that were previously transmitted to Plaintiff under the franchise agreement.

In prior correspondence between counsel and in Plaintiff's representations to this Court, Plaintiff states that it has obtained information from third parties that reflects Defendants' transfer of referrals between MEH and MHC. In response to that assertion, defense counsel suggests that any such transfers might relate to the Agency on Aging sending referrals to the "wrong Petrenko" or phone calls being routed through the same answering service and/or documents mistakenly transmitted given the two entities' use of the same business address. Be that as it may, Plaintiff is entitled to discovery on that issue, including any records relating to such transfers.

With respect to MHC in particular, the Court agrees that Defendants must produce all responsive electronic and other communications and documents for the time period between MHC's formation and February 2024. Defendants must also respond to interrogatories relating to MHC if the requested information is known to Defendants. For both before and after Vladimer transferred ownership of MHC to his son, Defendants must produce any and all documents in any Defendant's possession, custody or control, including but not limited to any electronic records (including emails or texts) relating to Vladimir Petrenko's "volunteer" assistance with MHC "payroll calculations," or other assistance provided by Elena Petrenko.[4]

Defense counsel suggested that the information currently belongs to MHC. But the fact that MHC or the Petrenkos' son may have some objection to Defendants' production is not grounds for *Defendants*' failure to fully respond to all interrogatories if the information is known to them, nor is it grounds for their failure to fully comply with this order if they have records or information within their possession, custody or control.

---

[4]Defendants also should supplement their answer to Interrogatory No. 9 to provide additional detail on the nature of the payroll assistance Vladimir provides, including the software used and the records relied upon.

Vladimir Petrenko admittedly owned and operated MHC until mere weeks before this lawsuit was filed and there is at least some suggestion that Elena Petrenko assisted with hiring. It would be highly unusual for Defendants to have no information or responsive documents or communications in any form (whether electronic or paper) concerning an entity that they so recently owned and operated, and as to which Vladimir continues to provide "volunteer" payroll services.[5]

### B. Plaintiff's Request to Compel MHC to Respond to the Subpoena

Although the Court grants Plaintiff's construed motion to compel Defendants to promptly supplement their responses, the Court will deny Plaintiff's request to directly compel MHC to respond to the outstanding subpoena based on a presumed lack of jurisdiction. Ordinarily, a party seeking to enforce a subpoena served on a non-party must file a motion to compel in the court that issued the subpoena. In the limited record available to this Court, MHC appears to be a Connecticut entity that is not currently owned or operated by any party to this lawsuit.

### C. Plaintiff's Request to Extend Remaining Pretrial Deadlines

Plaintiff also requests an 8-week further extension of pretrial deadlines for expert disclosures and discovery. Although the undersigned initially agreed to grant that request, it is not clear that the amended order of reference provides the undersigned with such authority. Out of an abundance of caution, therefore, the undersigned only conditionally grants the requested extensions.

---

[5] Depending on the timing, Defendants may have had an obligation to preserve MHC records.

## IV. Conclusion and Order

For the reasons stated and consistent with this Memorandum Order, **IT IS ORDERED:**

1. Plaintiff's oral motion to compel Defendants to supplement their responses to the outstanding discovery requests is GRANTED, with all supplemental responses to be served on or before December 12, 2025;

2. Plaintiff's oral motion to compel MHC to respond to the subpoena served on it on June 26, 2025 is DENIED due to a lack of showing that this Court has jurisdiction to enforce the subpoena over the non-party Connecticut entity;

3. Plaintiff's unopposed oral motion to extend the remaining expert disclosure deadlines[6] and the March 2, 2026 discovery deadline[7] by an additional eight weeks is conditionally GRANTED, subject to further order by Judge Hopkins.

*s/Stephanie K. Bowman*
United States Chief Magistrate Judge

---

[6] The current deadlines, last extended on November 12, 2025, requires Plaintiff to disclose experts on December 8, 2025, with Defendants to disclose experts on January 23, 2026. Plaintiff's deadline for the disclosure of any rebuttal experts is currently February 6, 2026.

[7] Judge Hopkins originally scheduled a pretrial status conference at the close of discovery on February 4, 2026. That pretrial conference date remains, as it was not adjusted at the time that the discovery deadline was extended.